## Commonwealth *vs.* Ovidio Blanco Reyes.

Hampden. April 1, 1996. - September 23, 1996.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, O'Connor, Greaney, & Fried, JJ.

*Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Probable cause, Affidavit. *Probable Cause. Controlled Substances.*

An affidavit in support of a search warrant failed to establish probable cause for the issuance of the warrant where it did not demonstrate the veracity of the confidential informant; nor was the informant's tip so detailed as to ensure the requisite reliability; further, the police investigation was not sufficient to corroborate the informant's information: the defendant's motion to suppress evidence, including a statement of the defendant that was the "fruit of the poisonous tree," should have been allowed. [571-573] Greaney, J., dissenting, with whom Lynch and Fried, JJ., joined.

. Indictment found and returned in the Superior Court Department on December 6, 1991.

A pretrial motion to suppress evidence was heard by *John F. Moriarty,* J., and the case was also heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael J. Hickson,* Assistant District Attorney, for the Commonwealth.

*Robert J. Danie* for the defendant.

Liacos, C.J. On June 17, 1992, the defendant, Ovidio Blanco Reyes, was convicted in a jury-waived trial of trafficking in a controlled substance (cocaine) under G. L. c. 94C, § 32E (*b*) (1994 ed.). The judge denied the defendant's pretrial motion to suppress evidence obtained during a search of a second-floor apartment located at 5 Grant Street, Holyoke.[1]

---

[1]Seized from the apartment were cocaine, cash, drug paraphernalia, and personal papers belonging to the defendant. The motion to suppress evidence additionally sought suppression of a statement made to police at the police station after the defendant's arrest. Contrary to the assertion in the

The defendant asserted in his motion that the affidavit supporting the warrant fails to establish probable cause for the search, in violation of the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution. The Appeals Court determined that the motion to suppress should have been granted and reversed the defendant's conviction. *Commonwealth* v. *Reyes*, 38 Mass. App. Ct. 483 (1995). We granted the Commonwealth's application for further appellate review. We agree with the Appeals Court and reverse the judge's denial of the defendant's motion.

The affidavit in support of the search warrant stated as follows: "On 11-24-91 Captain Paquette of the Uniform Division received a phone call from a Cooperating Member of the Community [(CI)] who told him that there was a large quanity [*sic*] of Cocaine at 5 Grant in a second floor apartment. The CI further told Captain Paquette that two Col[o]mbians operating a white blazer, New York Registration E6J964, had arrived in Holyoke on 11-22-91 and that this motor vehicle was parked in the rear of 5 Grant Street. The CI also told Captain Paquette that they had brought approximately two to three Kilo-Grams which the CI had seen in the Grant Street, second floor apartment. The CI stated that the white blazer would be leaving on 11-24-91 with $300,000 to $400,000 which was made from the sale of Cocaine.

"On 11-24-91 Officer J. Whalen went to 5 Grant Street where he found a white blazer, New York Reg. E6J964, parked in the rear. A check with the New York Registry of Motor Vehicle indicates that this vehicle is [registered] to Jose A. Rodriquez. . . . A further check with NCIC indicates

dissent, the police inventory of property seized constituted just one page. Of course, it matters not what police actually seize during a search, see, e.g., *Commonwealth* v. *Straw*, 422 Mass. 756, 758 (1996) (evidence of over 200 grams of cocaine, $1,750 in cash, paraphernalia, and personal effects suppressed where briefcase illegally searched), when determining the legality of the search itself. Although the dissent relies on an identified Hispanic male's (Rodriquez) past New York conviction for carrying a loaded weapon to support an inference that Rodriquez is a "large scale cocaine dealer," it must be noted that no weapons were found in the apartment. Further, carrying a firearm is not a crime in this Commonwealth. See G. L. c. 269, § 10 (*a*) (1994 ed.) (carrying a firearm without a license to do so is a crime); *Commonwealth* v. *Alvarado, ante* 266, 269 (1996) (report of carrying a firearm, absent more, does not establish reasonable suspicion of criminal activity).

that Jose A. Rodriquez has a Criminal record in the State of New York for Carrying a loaded weapon, impersonating a Police Officer, and assault to cause physical harm.

"Myself and Sgt. Dinapoli have personal knowledge of the above listed motor vehicle having received information in the past concerning the operator of that motor vehicle being involved at 289 Walnut Street in a large scale Crack Cocaine and Cocaine operation. We also had information from a member of the Dominican-Hispanic community that this motor vehicle made numerous trips to New York to pick up large quanities [*sic*] of Cocaine to be [delivered] in [the] Holyoke area for sale.

"A check with Official City of Holyoke records the renter of 5 Grant Street, second floor is Ovidio Blanco Reyes. I have personal knowledge that Ovidio Blanco Reyes is from the Dominican Republic and is a resident alien. I also have received information in the past that Ovidio Blanco Reyes is a large distributor of Cocaine and Crack Cocaine. I have conducted an investigation into the distribution of Cocaine in the 650 South East Area this year and observed drug sales being made and the money passed to Ovidio Blanco Reyes and Daniel Garcia in a late model Caprice Classic which was [registered] to Ovidio Blanco Reyes. At the time of this arrest Mr. Reyes stated that he lived at 289 Walnut Street. Subsequent to this arrest information was developed from a participant that Mr. Reyes was a large scale Cocaine distributor, and that he used several different apartments in the City to move the Cocaine around to a safe house location.

"On 8-16-91 Sgt. Dinapoli arrested a Dominican male, Diego Mejia of no known address, with 80 vials of Crack Cocaine in his possession. Sgt. Dinapoli developed information that Mr. Mejia was involved in the distribution of the Crack Cocaine with Jose Rodriquez who he knew operated the White Blazer, New York Registration E6J964. Subsequent to this arrest I was in the Holyoke Police Department when Mr. Reyes came in to try and secure the release of the motor vehicle Mr. Mejia was operating at the time of his arrest for the Crack Cocaine.

"Based on information received from the Cooperating Member of the Community, my personal knowledge of Ovidio Blanco Reyes, information received by St. Dinapoli concerning the White Blazer and the arrest of Mr. Mejia, information

that Mr. Reyes does live at 5 Grant Street, second floor, arrest of Ovidio Blanco Reyes, I believe that there is a large quanity [*sic*] of Cocaine being kept for distribution at 5 Grant Street, second floor."

The standards by which probable cause for a search warrant based on information provided by a confidential informant is measured are well established in this Commonwealth. In *Commonwealth* v. *Upton*, 394 Mass. 363, 373 (1985), we rejected the more lenient "totality of the circumstances" test announced in *Illinois* v. *Gates*, 462 U.S. 213 (1983), and ruled that art. 14 requires adherence to the principles set out in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). Under the *Aguilar-Spinelli* standard, a magistrate must "be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or his information 'reliable' (the veracity test)." *Commonwealth* v. *Upton, supra* at 375, quoting *Aguilar* v. *Texas, supra* at 114. Each of the two prongs of the test must be separately considered and satisfied, but independent police corroboration can rectify deficiencies in either or both prongs. *Id.* at 375-376.

The Appeals Court concluded that, although the basis of the informant's knowledge was shown by his personal observation of the cocaine in the apartment, the affidavit failed to articulate the circumstances underlying the affiant's belief in the informant's veracity. *Commonwealth* v. *Reyes*, 38 Mass. App. Ct. 483, 485, 487 (1995). The only indication that the informant had personal knowledge of criminal activity at 5 Grant Street is found in his statements that the men in the white automobile brought cocaine "which the CI had seen in the 5 Grant Street, second floor apartment," and that the white automobile would be leaving that day. The informant provided no names or descriptions of the individuals involved, no indication that he had witnessed one or a series of sales transactions, and few details of the reported drug operation. See *Commonwealth* v. *Desper*, 419 Mass. 163, 164 (1994) (informant present on numerous occasions in past month, named and described defendants, and described details of cocaine sales); *Commonwealth* v. *Spano*, 414 Mass. 178, 182-

183 (1993) (informant familiar with manner of cocaine sales gave extensive details of reported operation). The tip was devoid of details that would normally support a belief that the informant had actually been inside the apartment and obtained personal knowledge of illegal activities. We need not decide, however, whether the informant's assertion of personal knowledge, coupled with minimal additional detail, meets the "basis of knowledge" test, because the affidavit fatally failed to show the veracity of the informant.

The informant's reliability was not proven by the prior provision of information leading to convictions or seizures of evidence, or otherwise proven accurate. See *Commonwealth* v. *Mejia*, 411 Mass. 108, 112-113 (1991); *Commonwealth* v. *Perez-Baez*, 410 Mass. 43, 46 (1991); *Commonwealth* v. *Rojas*, 403 Mass. 483, 486 (1988). The tip itself was not so detailed as to ensure the requisite reliability. See *Commonwealth* v. *Parapar*, 404 Mass. 319, 323 (1989). Neither was the police investigation sufficient to corroborate the informant's information. "Information received in the past" and attributed to various unspecified members of the community, to the effect that the defendant was a large-scale cocaine distributor and that the automobile parked outside the defendant's address was often used to transport cocaine from New York, was not shown to be recent enough to avoid being stale and did not "provide the sort of idiosyncratic detail that would effectively corroborate and lend credibility to the informant's assertions." *Commonwealth* v. *Desper, supra* at 167. See *Commonwealth* v. *Nowells*, 390 Mass. 621, 627 (1983) (separate confidential informants' tips may corroborate each other if sufficiently detailed and independently reliable).

Further, the police conducted no surveillance of activities at the defendant's address other than to verify the location of the automobile, and engaged in no controlled buy of narcotics from the defendant or anyone at the location, see *Commonwealth* v. *Desper, supra* at 165, 167; *Commonwealth* v. *Warren*, 418 Mass. 86, 89 (1994); *Commonwealth* v. *Spano, supra* at 185-186; *Commonwealth* v. *Carrasco*, 405 Mass. 316, 322 (1989); *Commonwealth* v. *Parapar, supra* at 323.

Although the affidavit intimated that the defendant had been arrested previously, presumably for a drug offense, the magistrate was told no details about the purported arrest, including when it occurred, whether charges were brought,

whether contraband was seized, or the ultimate disposition of the arrest. See *Commonwealth* v. *Desper, supra* at 167 (convictions of "uncertain vintage" given no weight in probable cause determination); *Commonwealth* v. *Spano, supra* at 185 (recent history of similar crimes may be considered in determining probable cause). There is absolutely no evidence in the record before us to suggest, as does the dissent, that the police were merely waiting for an opportunity to arrest the defendant, which conveniently arose with the unidentified confidential informant's tip. The judge did not so much as allude to such a state of events. The defendant's motion was denied without memorandum of decision. Not only do we lack the power of clairvoyance, but it is wholly inappropriate to speculate on a bare record as to what the judge may or may not have concluded about what the police officers may or may not have speculated when seeking a search warrant.

Finally, only minimal weight in a probable cause determination can be placed on the affiant's knowledge that the defendant attempted to retrieve Mejia's automobile from the police after Mejia's drug-related arrest. Neither Mejia's arrest (outcome uncertain) nor the defendant's attempt to retrieve the vehicle suggest the defendant was involved in illegal drug-related activity. In short, the independent investigation revealed no "predictive details that were not easily obtainable by an uninformed bystander." *Commonwealth* v. *Desper, supra* at 167-168, quoting *Commonwealth* v. *Lyons*, 409 Mass. 16, 21 (1990). A commonsense view of the affidavit as a whole, see *Commonwealth* v. *Warren*, 418 Mass. 86, 90 (1994), fails to establish the veracity of the informant's knowledge, and probable cause did not exist for the warrant's issuance.

Finally, it appears clear on this record that the statement made by the defendant to the police must be suppressed as the "fruit of the poisonous tree." The rationale behind the conclusion is amply stated in the well-reasoned opinion of the Appeals Court and need not be repeated here. The defendant's motion to suppress evidence should have been granted. The conviction is reversed.

*So ordered.*

GREANEY, J. (dissenting, with whom Lynch and Fried, JJ., join). There has been a failure to apply certain fundamental

principles to the examination of the affidavit. These principles are as follows. A warrant issues on a showing of probable cause, a much less rigorous requirement than that posed by proof beyond a reasonable doubt. Accordingly, "a certain leeway or leniency [is always granted] in the after-the-fact review of the sufficiency of applications for warrants," *Commonwealth* v. *Corradino,* 368 Mass. 411, 416 (1975), and that review necessarily must take into account the substantial role of reasonable inferences and common knowledge in deciding whether an assertion has been shown to a probability. *Commonwealth* v. *Alessio,* 377 Mass. 76, 82 (1979). Courts, therefore, "should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner . . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States* v. *Ventresca,* 380 U.S. 102, 109 (1965). Critically, "[t]he sufficiency of the affidavit is to be decided on the basis of a consideration of all its allegations as a whole, and not by first dissecting it and then subjecting each resulting fragment to a hypertechnical test of its sufficiency standing alone." *Commonwealth* v. *Stewart,* 358 Mass. 747, 751 (1971).

This affidavit, considered as a whole, and with fairness, is sufficient. The informant's basis of knowledge is clearly satisfied by observation of two to three kilograms of cocaine in the defendant's apartment which would be subject to sale at a price estimated between $300,000 and $400,000.

The remaining issue is a simple one — does the affidavit disclose a reasonable basis to support the reliability of the informant's report? The police verified that the defendant rented the apartment where the cocaine had been seen, and the police knew from personal observations that the defendant dealt drugs from his late model Caprice classic automobile with another identified Hispanic man. The white Blazer, which was to make the substantial delivery of cocaine to the defendant, was seen exactly where it was said to be, in the back of the apartment building where the defendant lived; the New York registration plate number matched that of the Blazer; and the Blazer was registered to a known Hispanic male (Jose R. Rodriquez), who (based on a police check of his criminal records) likely carried a loaded handgun, a protection usually considered prudent by any large scale

cocaine dealer. The defendant was also linked to a third cocaine dealer (Diego Mejia) who had engaged in cocaine distribution with Rodriquez. The independent information and corroboration gathered by the police thoroughly supported the informant, and provided sufficient indication of the defendant's involvement with cocaine distribution so that the magistrate issuing the warrant reasonably could conclude "that he [was] relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli* v. *United States*, 393 U.S. 410, 416 (1969).

Considered on a commonsense basis, this would appear a situation in which the police had probable cause to believe that the defendant was dealing in large amounts of unlawful drugs, on a regular basis, based on the police officers' own observations and the reasonable inferences that could be drawn from the defendant's association with others involved in the illicit drug trade. A reasonable person could conclude that the police may well have been waiting to arrest the defendant (again), until such time as they had cause to believe that he was in possession of a considerable quantity of cocaine (brought in from New York) commensurate with the scope of the defendant's activities. The informant's tip merely established the time at which such an arrest and the accompanying search should occur.

The experienced Superior Court judge appears to have so concluded, and I would affirm his denial of the motion to suppress. This result is consistent with what the court stated in *Commonwealth* v. *Upton*, 394 Mass. 363, 374 (1985): "We conclude . . . that the principles [of *Aguilar-Spinelli*], if not applied hypertechnically, provide a more appropriate structure for probable cause inquiries under art. 14." The search of the apartment uncovered a treasure trove of cocaine, money, and drug distribution equipment which, to list and identify item by item, would add pages to this separate opinion.[1] The defendant validly confessed to his ownership of

---

[1]The illegal substances and other paraphernalia and items taken during the search are generically described in the one-page-return filed after the search. The Commonwealth's brief spends eight and one-half pages particularly describing the magnitude of the items devoted to the drug enterprise.

the cocaine and to his role as a cocaine distributor. I would affirm the judgment convicting the defendant of trafficking in large quantities of cocaine.