## Commonwealth *vs.* Marshawn Garden.

Suffolk. December 3, 2007. - April 1, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Constitutional Law,* Search and seizure, Reasonable suspicion, Probable cause. *Search and Seizure,* Threshold police inquiry, Exigent circumstances, Probable cause, Automobile. *Threshold Police Inquiry. Probable Cause. Controlled Substances.*

A Boston Municipal Court judge properly allowed the criminal defendant's motion to suppress evidence seized from his motor vehicle, where, although police officers had probable cause to stop the defendant's vehicle in order to conduct a threshold inquiry [45-46] and the odor of burnt marijuana supplied probable cause for one of the officers to search the passenger compartment of the vehicle [47-49], the permissible scope of the search did not extend to the trunk of the vehicle, because the officers could not reasonably have believed that the source of the smell of burnt marijuana would be found in the trunk [49-53]; likewise, the judge properly granted the defendant's motion to suppress a statement he gave to police after his arrest, where nothing attenuated that statement from the taint of the illegal search [53-54]. Cowin, J., dissenting, with whom Greaney and Spina, JJ., joined.

Complaint received and sworn to in the Boston Municipal Court Department on February 16, 2006.

A pretrial motion to suppress evidence was heard by *Raymond G. Dougan, Jr.,* J.

An application for leave to file an interlocutory appeal was allowed by *Spina,* J., in the Supreme Judicial Court for the county of Suffolk.

*John P. Zanini,* Assistant District Attorney, for the Commonwealth.

*Veronica J. White* (*Andrea Petersen* with her) for the defendant.

Botsford, J. The defendant was charged in the Boston Municipal Court Department with carrying a firearm without a license, in violation of G. L. c. 269, § 10 (*a*); possession of a firearm without a firearm identification card, in violation of G. L. c. 269,

§ 10 (h); receiving stolen property, in violation of G. L. c. 266, § 60; and unlawful possession of a class D substance, in violation of G. L. c. 94C, § 34. After a hearing, a judge in that court granted the defendant's motion to suppress evidence seized from the trunk of the vehicle that the defendant was driving. The judge also suppressed statements made by the defendant after he had been arrested and given his Miranda warnings. A single justice of this court allowed the Commonwealth's application for interlocutory appeal. The Commonwealth argues that the search was justified by probable cause because the officer detected the odor of burnt marijuana after a valid stop of the car. While we agree that in appropriate circumstances the smell of marijuana can provide probable cause to search all parts of a vehicle, in the circumstances of this case, probable cause to search did not extend to the trunk. Accordingly, we affirm.

1. *Background.* We recite the facts as they appear in the judge's memorandum of decision allowing the defendant's motion to suppress.[1] At 7:45 P.M. on October 6, 2005, three Boston police officers, Officers Cogavin, Cooley, and Tarantino, were in the area of Rosewood Street in the Mattapan section of Boston. One hour earlier, Officer Tarantino had received information from a confidential informant concerning shots at a house located a few blocks away, at 590 River Street, at about 6 P.M., and that an individual named "Bubs" was involved in this shooting, and could be found with three other men in a white car. Officer Tarantino passed this information on to Officer Cogavin, who in turn relayed it to Officer Cooley. Some of the officers, including Officer Cooley, knew that the name "Bubs" referred to Leroy Wells, and also knew that Wells had prior firearm arrests and arrests for crimes of violence. The three officers were in the Rosewood Street area checking for suspects connected to the reported 6 P.M. shooting. At about 7:45 P.M., Officer Cooley saw Wells and two other men enter a 2002 black Honda automobile as passengers. Officers Cooley and Cogavin followed the Honda, and determined through a check with the Registry of Motor

---

[1] The hearing on the defendant's motion to suppress was tape recorded, but apparently the recording was inaudible, and thus could not be transcribed. Accordingly, the parties have agreed to rely on the motion judge's findings of fact.

Vehicles that the Honda was owned by a woman named Tykeia Samuels; they also learned that Samuels had a suspended license. Based on this information, and unable to observe the driver of the Honda, the officers stopped the car for a motor vehicle infraction.

The driver's window of the Honda was open as Officer Cooley approached, and he could see that the driver was a man. The defendant was in the driver's seat. Officer Cooley approached and spoke to the defendant and as he did so, he saw that Wells was in the front passenger seat. He also noticed the smell of burnt marijuana. According to the judge's findings, "Cooley did not smell the burned marijuana from within the motor vehicle but only smelled the marijuana coming from the clothes of the occupants of the motor vehicle." Officer Cooley asked the defendant to get out of the car. The officer feared for his safety — not because of the defendant but because of Wells. Another officer apparently directed Wells to get out of the car also.

The officers conducted patfrisks of both the defendant and Wells; no marijuana, other drugs, or other contraband was found on either man. The officers asked the two passengers in the back seat, both juveniles, to get out of the car.[2] Officer Cooley then searched the driver's side and passenger's side front seat of the Honda, as well as the back seat. He did not find any marijuana or other contraband.

Officer Cooley asked the defendant if he could look into the trunk; the defendant said no. Nevertheless, Officer Cooley unlocked the trunk, where he discovered three pistols, one of which was protruding from a backpack, as well as two plastic bags of a green leafy substance found in another backpack. All four were placed under arrest and transported to a police station.

Once at the station the defendant was advised of his Miranda rights and signed a Miranda form, and then told Officer Tarantino that the "45" belonged to him.

2. *Discussion.* a. *The stop.* "A police officer may stop a vehicle in order to conduct a threshold inquiry if he has a reasonable suspicion that the occupants have committed, are commit-

---

[2]The record does not reveal whether the two back seat passengers were pat frisked.

ting, or are about to commit a crime. His suspicion must be based on specific, articulable facts and reasonable inferences drawn therefrom. A hunch will not suffice." *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984), and cases cited. Before the police officers stopped the Honda, they knew that its owner had a suspended license. Because they did not know at that time that the driver of the car was a man, this license information provided a reasonable suspicion to believe that the registered owner of the vehicle was driving with a suspended license.[3] See *Commonwealth* v. *Deramo*, 436 Mass. 40, 44 (2002) ("the likelihood that the operator is the owner is strong enough to satisfy the reasonable suspicion standard").

The defendant argues that any justification for the stop evaporated the moment Officer Cooley, in approaching the Honda, observed that the driver of the Honda was a man, and therefore could not be the female owner with the suspended license. We agree that at that moment Officer Cooley no longer had reasonable suspicion that a crime was being committed. An "investigative detention must be temporary and last no longer than reasonably necessary to effectuate the purpose of the stop." *Commonwealth* v. *Ciaramitaro*, 51 Mass. App. Ct. 638, 643 (2001). See *Commonwealth* v. *Feyenord*, 445 Mass. 72, 77 (2005), cert. denied, 546 U.S. 1187 (2006). Nevertheless, because the Honda was already legitimately stopped, it was no violation of the defendant's rights under art. 14 of the Massachusetts Declaration of rights or the Fourth Amendment to the United States Constitution for Officer Cooley to continue walking the remaining distance from the police cruiser to the Honda, even after learning the gender of the driver. At the very least, the officer properly could have taken the opportunity to explain the reason for the stop before allowing the defendant to continue on his way.

---

[3]The Commonwealth does not attempt to justify the stop based on the confidential informant's tip about Wells's involvement in the earlier shooting. The motion judge noted several reasons why the informant's tip might not have been sufficiently reliable to support the stop, including: the absence of any precise information other than Wells's presence in the area with a group of men in a white car, when it was not uncommon for Wells to be in the area with a group of men; the delay between the alleged shooting and the tip, and the subsequent delay between the tip and the officers' observation of Wells; the officers' observation of Wells in a black car, not a white one; and the absence of any report to police confirming the shooting.

b. *Search of the Honda*.[4] "In general, a police search or seizure must be supported by a valid warrant. . . . However, it is well settled that, in certain 'exigent circumstances' that make obtaining a warrant impracticable . . . a search or seizure may be justified by probable cause." (Citations omitted.) *Commonwealth* v. *Washington*, 449 Mass. 476, 480 (2007). The Commonwealth bears the burden of proving "the existence of both probable cause to believe that the automobile contained contraband and of exigent circumstances to justify proceeding without a warrant." *Commonwealth* v. *Santiago*, 410 Mass. 737, 744 (1991). The exigent circumstance on which the Commonwealth relies is the inherent mobility of an automobile. According to the automobile exception to the warrant requirement, the search of the Honda was justified as long as the officers had probable cause to believe that there was contraband in the car. *Commonwealth* v. *Motta*, 424 Mass. 117, 123-124 (1997).

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Commonwealth* v. *Cast*, 407 Mass. 891, 895 (1990), quoting *Draper* v. *United States*, 358 U.S. 307, 313 (1959). The particular fact relied on by the police officers in this case was the odor of burnt marijuana coming from the clothes of the passengers in the Honda. We agree that the officers could have reasonably inferred from this fact that evidence of marijuana was likely to be found in the car.[5] "[T]he perception by a police officer with training and experience in narcotics detection of 'a strong, fresh odor of burnt marijuana emerging from a motor vehicle provide[s] probable cause to search the vehicle.' " *Commonwealth* v. *Cor-*

---

[4]The defendant has not challenged Officer Cooley's order that he get out of the car, or the patfrisk that the officer conducted of his person.

[5]In his findings, the motion judge emphasized that Officer Cooley smelled marijuana coming from the clothing of the Honda's occupants, rather than from the inside of the automobile. For purposes of determining whether there is probable cause to search the passenger compartment of a car, this seems to be a distinction without a difference, given the confined area represented by the passenger compartment of most automobiles. See *Commonwealth* v. *Correia*, 66 Mass. App. Ct. 174, 177 (2006) (detection of "pretty heavy" marijuana odor inside passenger compartment of automobile provided probable cause to search both the compartment and the occupants traveling in it).

*reia*, 66 Mass. App. Ct. 174, 177 (2006), quoting *Commonwealth* v. *Kitchings*, 40 Mass. App. Ct. 591, 596 n.8 (1996). Although the odor of marijuana often has been considered in conjunction with other factors in establishing probable cause,[6] we agree with the Appeals Court that the odor of marijuana is sufficiently distinctive that it alone can supply probable cause to believe that marijuana is nearby. See *Commonwealth* v. *Lawrence L.*, 439 Mass. 817, 823-824 (2003) (detection of strong smell of marijuana on clothes of juvenile while at school provided probable cause to search him); *Commonwealth* v. *Correia*, 66 Mass. App. Ct. at 177. See also *Johnson* v. *United States*, 333 U.S. 10, 13 (1948) (identification of odor sufficiently distinctive to identify controlled substance by one qualified to know odor "might very well be found to be evidence of most persuasive character" to constitute probable cause).[7]

The defendant argues that the Commonwealth provided no

---

[6]See, e.g., *Commonwealth* v. *Henley*, 63 Mass. App. Ct. 1, 6 (2005) (odor of marijuana emanating from trunk of rented vehicle stopped in breakdown lane at 2 A.M., with no authorized operator present, provided probable cause to arrest driver); *Commonwealth* v. *Kitchings*, 40 Mass. App. Ct. 591, 595-596 (1996) (van that "reeked" of freshly burned marijuana, together with absence of registration plate or authorized driver for rented van, and large amount of cash on one occupant, gave probable cause to search van); *Commonwealth* v. *Valentine*, 18 Mass. App. Ct. 965, 966 (1984) (odor of marijuana on driver's clothes, together with seeds, brown vegetable material, and small envelope in plain view, gave probable cause to believe contraband in car).

[7]This result is also in accord with the majority of courts that have considered the issue. See *United States* v. *Staula*, 80 F.3d 596, 602 (1st Cir.), cert. denied, 519 U.S. 857 (1996) ("case law is consentient that when a law enforcement officer detects the odor of marijuana emanating from a confined area, such as the passenger compartment of a motor vehicle, that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area"); *State* v. *MacDonald*, 253 Kan. 320, 325 (1993) (police officer had probable cause to search car based on marijuana odor inside it; court observed, "A majority of courts have found that marijuana odor detected by an experienced law enforcement officer can provide sufficient probable cause to support a warrantless search"); *People* v. *Kazmierczak*, 461 Mich. 411, 426-427 (2000) (adopting "majority view" that "the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle"); *State* v. *Moore*, 90 Ohio St. 3d 47, 48, 50 (2000), cert. denied, 532 U.S. 908 (2001) (adopting "what appears to be the majority view," that "smell of marijuana, as detected by a person who is qualified to recognize the odor . . . is sufficient to establish probable cause"). See generally 2 W.R. LaFave, Search and Seizure § 3.6(b), at 310-311 (4th ed. 2004) ("generally accepted" that probable cause can be found when one qualified to recognize

evidence that Officer Cooley had sufficient training or expertise to recognize marijuana's distinctive odor, and that in the absence of such evidence there can be no probable cause. We agree that probable cause to search can be based on the odor of marijuana only when it is detected by an officer with the ability to identify the smell. See, e.g., *Johnson* v. *United States*, 333 U.S. at 13 (probable cause may be found "[i]f the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor . . ."); *Commonwealth* v. *Correia*, 66 Mass. App. Ct. at 177 (probable cause provided by "perception by a police officer with training and experience in narcotics detection"). However, the appropriate opportunity to question the officer's qualifications in odor detection was during the hearing on the motion to suppress. Included in the judge's findings was the fact that "Cooley noticed the smell of burned marijuana." Within this fact is the implicit finding that the judge credited Officer Cooley's testimony on the subject and believed he was qualified to recognize the odor, and in fact did recognize it.[8] Such a conclusion is all the more appropriate here because the judge was careful in his findings to point explicitly to those portions of Officer Cooley's testimony that he did not credit, and no such disclaimer appears to modify the finding concerning Officer Cooley's detection of the odor of marijuana.[9]

c. *Scope.* Although we conclude that the odor of marijuana

---

distinctive odor of marijuana detects it emanating from a particular place). But see *State* v. *Olson*, 180 Mont. 151, 155 (1979) (odor of marijuana, although one factor to consider, is insufficient alone to provide probable cause for warrant to search residence).

[8]Courts in other jurisdictions have reached the same conclusion. See, e.g., *State* v. *Harrison*, 111 Ariz. 508, 509 (1975) (credibility of officer's testimony about smelling marijuana is factual question left to jury); *People* v. *Kazmierczak*, 461 Mich. at 421-422 (deferring to trial court's determination of credibility of officer's testimony about smelling marijuana); *State* v. *Fuente*, 871 S.W.2d 438, 441-442 (Mo. 1994) (deferring to trial court's finding that trooper smelled marijuana on approaching vehicle); 2 W.R. LaFave, Search and Seizure, *supra* at § 3.6(b), at 313, quoting *United States* v. *Ludwig*, 508 F.2d 140, 142 (10th Cir. 1974) ("At least one court has held that 'inherent in the officer's statement that he smelled marihuana is the claim that he is familiar with that substance's odor,' but this seems to mean no more than that such a general statement will suffice if not challenged but that the defendant is free to cross-examine the officer as to his qualifications").

[9]The defendant asks us to infer that, in order to detect the odor of marijuana on the clothes of the occupants of the car, Officer Cooley must have first

supplied probable cause for a search of the vehicle, the permissible scope of the search was not limitless. "The scope of a warrantless search of an automobile . . . [is defined] by the object of the search and the places in which there is probable cause to believe that it may be found." *Commonwealth* v. *Cast*, 407 Mass. 891, 906 (1990), quoting *United States* v. *Ross*, 456 U.S. 798, 824 (1982). For example, "[j]ust as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." *United States* v. *Ross*, 456 U.S. at 824.

A search of the passenger compartment of the vehicle was within the permissible scope of the search because any contraband hidden on the passengers' person easily could have been transferred to a location in the passenger compartment when they were ordered to get out. See *Commonwealth* v. *Cast*, 407 Mass. at 902-903 (officers had probable cause to search those places in car where contraband might have been placed while car was out of sight). Cf. *Commonwealth* v. *Moses*, 408 Mass. 136, 144 (1990) (officers who observed defendant duck beneath dashboard after his vehicle was stopped could conduct interior search of automobile "confined in scope" to discover any weapon that could have been concealed beneath dashboard). Moreover, the permissible scope of the search in this case extended not only to the passenger compartment of the vehicle, but also to its occupants, particularly in light of the fact, found by the judge, that the smell of marijuana was coming from their clothing. See *Commonwealth* v. *Washington*, 449 Mass. 476, 486-487 (2007) (permitting search of passengers after traffic stop based on exigency and probable cause to believe evidence of crime was present; no arrest necessary to justify search); *Commonwealth* v. *Correia*, 66 Mass. App. Ct. at 177 (odor of burnt marijuana emanating from vehicle gave probable cause to search vehicle's occupants as well as vehicle for evidence of marijuana use and

leaned his head into the car, an action that the defendant contends would have impermissibly expanded the scope of the stop beyond what was constitutionally permitted at that moment. There is no mention in the judge's findings of Officer Cooley's leaning into the vehicle. We decline to add a finding that is absent from the record and not required by the facts that have been found.

possession, whether or not police had probable cause to arrest any particular occupant); *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 700 (1984) (search of defendant's person constitutionally justified by "probable cause to believe he carried marihuana or other controlled substances, coupled with exigent circumstances" inherent in unanticipated encounter in parking lot). However, such a search of the occupants of the car, justified by probable cause to search and the exigent circumstances of the unanticipated stop, "must be limited in scope to those areas of the person and his clothing which could reasonably be thought to contain the items sought." *Id.* at 701.

The search of the Honda's trunk in this case exceeded the permissible scope of the search because Officer Cooley could not reasonably have believed that the source of the smell of burnt marijuana would be found in the trunk. Reasonableness is the " 'touchstone' of art. 14 . . . and the Fourth Amendment." *Commonwealth* v. *Roland R.*, 448 Mass. 278, 281 (2007). Accordingly, a valid search is limited to "any area, place, or container reasonably capable of containing the object of the search." *Commonwealth* v. *Signorine*, 404 Mass. 400, 405 (1989).

The Commonwealth cites *Commonwealth* v. *Cast*, 407 Mass. at 906, in which we held, quoting *United States* v. *Ross*, 456 U.S. at 825, that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." The Commonwealth argues that according to this rule, a search of the trunk is permitted whenever officers have probable cause to believe there is contraband in a car. The Commonwealth's reading is too broad. In *Commonwealth* v. *Cast*, *supra*, law enforcement officers conducting surveillance observed the defendant place a suitcase they thought contained two kilograms of cocaine in the trunk of his rented car in Connecticut. When the officers stopped the defendant hours later as he was driving in the Commonwealth, they conducted a warrantless search of the entire vehicle, in addition to the trunk. The court rejected the defendant's argument that the officers only had probable cause to search the suitcase, and that for such a search they were required to obtain a warrant rather than rely on the automobile exception to the warrant requirement. *Id.* at

901. The court concluded that because on the particular facts of the case the officers did have probable cause to search the entire vehicle for the cocaine, and because exigent circumstances justified application of the automobile exception, the search of the entire car was permissible. *Id.* at 903-904. Nothing in the *Cast* case suggests that where automobiles are concerned, the general rule that officers limit their search to those locations where the objects of the search might reasonably be found is somehow suspended.

There is no question that in many cases involving searches of automobiles, probable cause to search extends to every area within the vehicle, including the trunk. The facts of this case, however, require a different conclusion, because the odor detected by the officers was not the odor of raw marijuana, which might reasonably suggest the defendant was engaged in selling or transporting the drug, but rather the odor of burnt marijuana, suggesting that the defendant, or others in the car, had been smoking marijuana in the not too distant past. Simply from detecting the odor of burnt marijuana on the clothes of the car's occupants — most of whom he had seen enter the car a very short time before — the officer could not reasonably have inferred that burning, recently burned, or even raw marijuana would be found in the trunk.[10] Accordingly, the search of the trunk was beyond the scope permitted by art. 14 or the Fourth Amendment.

The court in *United States* v. *Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000), provided a reasoned explanation for this conclusion: "This rule is premised on the common-sense proposition that the smell of burnt marijuana is indicative of drug usage, rather than drug trafficking, and because it is unreasonable to believe people smoke marijuana in the trunks of cars, the mere smell of burnt marijuana does not create the fair probability that the trunk contains marijuana." Accord *United States* v. *Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993). See *State* v. *Far-*

---

[10]This conclusion is supported by the judge's finding that at the time the officer searched the passenger compartment of the Honda, the rear back seat was locked in place, and provided no access to the trunk. In light of this fact, it would not have been reasonable for the officer to believe that the Honda's occupants could have hidden marijuana in the trunk as they were driving, or that they were carrying on their clothes a smell of marijuana coming from the trunk.

*ris*, 109 Ohio St. 3d 519, 530 (2006), cert. denied, 127 S. Ct. 1371 (2007) (odor of burnt marijuana within car does not, standing alone, give probable cause to search trunk).[11]

Contrary to the dissent's suggestion, this rule does not require distinguishing between users and dealers of drugs. Rather, it requires distinguishing between contraband that might reasonably be found in a trunk and contraband that would not reasonably be found in a trunk. Had the officers discovered contraband during the search of the passenger compartment or its passengers, even a small amount suggesting personal use, the permissible scope of the search might have extended not only to the passenger compartment of the automobile but also to its trunk. This is because "[i]t is widely accepted that the discovery of some controlled substances gives probable cause to search for additional controlled substances in the vicinity." *Commonwealth* v. *Skea*, 18 Mass. App. Ct. at 690 n.8. See *Commonwealth* v. *Moses*, 408 Mass. 136, 144-145 (1990) (discovery of cocaine and loaded handgun during protective search of passengers and passenger compartment supplied probable cause to search entire vehicle, including trunk). But see *Commonwealth* v. *Pena*, 69 Mass. App. Ct. 713, 717-718 (2007) (small bag of marijuana found during patfrisk of one passenger did not supply probable cause to search entire car including area under rear seat, because there was no connection between car and passenger's drugs).

d. *Statements.* "It is the Commonwealth's burden to establish that the evidence it has obtained and intends to use is sufficiently attenuated from the underlying illegality so as to be purged from its taint." *Commonwealth* v. *Damiano*, 444 Mass. 444, 454 (2005). The Commonwealth has not suggested any factors that would have attenuated the taint of the illegal search, and argues only that the search of the trunk was valid. Furthermore, it is plain that the defendant's statement to the police followed directly from his arrest that itself resulted directly

---

[11]But see *State* v. *Betz*, 815 So. 2d 627, 633-634 (Fla. 2002) (smell of burned marijuana, combined with other suspicious factors, gave probable cause to search entire car, including trunk); *Wilson* v. *State*, 174 Md. App. Ct. 434, 454-456 (2007), cert. denied, 76 U.S.L.W. 3439 (Feb. 19, 2008) (smell of burned marijuana alone provides probable cause to search entire car, including trunk).

from the illegal search of the Honda's trunk. See *Commonwealth* v. *Reyes*, 38 Mass. App. Ct. 483, 487-488 (1995), *S.C.*, 423 Mass. 568 (1996).

3. *Conclusion.* Because the search of the trunk was beyond the scope constitutionally permitted by probable cause on the particular facts found by the motion judge in this case, the evidence found in the trunk must be suppressed. Similarly, the statements made at the police station must be suppressed as tainted fruit of that impermissible search.

*Judgment affirmed.*


COWIN, J. (dissenting, with whom Greaney and Spina, JJ., join). I agree with the reasoning of the court except for its holding that the trunk of the automobile was beyond the permissible scope of the search. In my view, the odor of burnt marijuana, without more, provides probable cause to search any area of the vehicle that might reasonably contain marijuana, including the trunk. As the court acknowledges, there is a split of authority on the issue. In my view, we should follow what I believe is the more persuasive reasoning of those cases that permit such a search in these circumstances.

As a general rule, under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, police officers must have a warrant based on probable cause in order to conduct a search for contraband. *Commonwealth* v. *Cast*, 407 Mass. 891, 901 (1990). Searches conducted without prior judicial approval are per se unreasonable, subject to "a few specifically established and well-delineated exceptions." *Id.*, quoting *Commonwealth* v. *Anderson*, 406 Mass. 343, 346 (1989). One of those exceptions, under both the Fourth Amendment and art. 14 warrant requirements, is the so-called "automobile exception," when police have probable cause to believe that contraband is present somewhere in an automobile that has been lawfully stopped on a public way, and exigent circumstances (that is, the mobility of the automobile) make obtaining a warrant impracticable. *Commonwealth* v. *Cast*, *supra.* We have consistently held that the exigency created by the

inherent mobility of an automobile, combined with its owner's lessened expectation of privacy therein, can justify a warrantless search if the police have probable cause to believe that a crime has been or is being committed, and that the fruits of that crime or evidence related to the crime might be found in the vehicle. *Commonwealth* v. *Motta,* 424 Mass. 117, 123-124 (1997).

The question before us, then, is whether an odor of marijuana emanating from the passenger compartment of an automobile, while providing probable cause for a search of the passenger compartment, also provides probable cause for a search of the vehicle's trunk.[1] The odor of burnt marijuana indicates that the occupants of the vehicle are, or recently have been, smoking marijuana. That someone in the car has been smoking marijuana, in turn, gives police officers probable cause to believe that a crime has been or is being committed, i.e., that they are, or have recently been, in possession of marijuana. See G. L. c. 94C, § 34 (criminalizing possession of marijuana). Because the odor is present in the automobile, the requisite nexus between the automobile and the likely crime is established. See *Commonwealth* v. *Cast, supra* at 901-902 (for lawful search of automobile, police must have probable cause to believe vehicle contains contraband, not just probable cause relating to container whose relationship to vehicle is "purely coincidental").

In such circumstances, I see no principled reason why the trunk should be excluded from the search. Police officers searching an apartment pursuant to a warrant may open closets and drawers in that apartment; likewise, police conducting a search pursuant to the automobile exception may open a trunk or glove compartment, if they have probable cause to believe contraband may be found there. See *United States* v. *Ross,* 456 U.S. 798, 821 (1982) ("When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between . . . glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand"). The purpose of an automobile trunk

---

[1]I agree with the court that the precise source of the odor (whether it came from the passenger compartment itself or the clothing of the occupants) does not affect the analysis in this case.

is to store or transport items; moreover, it keeps from view items, such as contraband, that a person might want to conceal. See *id.* at 820 (contraband is rarely placed in plain sight in automobile, because "by their very nature such goods must be withheld from public view"). Therefore, a trunk is a part of the car that might reasonably contain the object of the search, and it is within the scope of the automobile exception in this case. See *Commonwealth* v. *Jiminez*, 22 Mass. App. Ct. 286, 290 (1986).

At least one of the Circuit Courts of the United States Court of Appeals (the Fifth Circuit) and one State appellate court (Maryland) have reached the same result. See, e.g., *United States* v. *McSween*, 53 F.3d 684, 687 (5th Cir.), cert. denied, 516 U.S. 874 (1995) (rejecting argument search must be confined to area where odor was detected); *United States* v. *Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (odor of burnt marijuana, without more, would justify search of entire vehicle); *Wilson* v. *State*, 174 Md. App. Ct. 434, 454-456 (2007), cert. denied, 76 U.S. L.W. 3439 (Feb. 19, 2008).[2]

The court's decision today, however, follows the reasoning of cases that limit the scope of a search based on an indication that a person is a "casual user" of marijuana rather than a dealer. See, e.g., *Wimberly* v. *Superior Court*, 16 Cal. 3d 557, 572 (1976); *State* v. *Schmadeka*, 136 Idaho 595, 599-600 (Ct. App. 2001). See also *United States* v. *Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000) (odor of burnt methamphetamine; same reasoning).[3] According to this logic, the smell of burnt or burning marijuana is evidence that the occupants of a car have recently

_____

[2]In addition, dictum in an Iowa case suggests that that State would also permit a search of the trunk based solely on the odor of marijuana. See *State* v. *Longo*, 608 N.W.2d 471, 473-474 (Iowa 2000) (while in case at bar other suspicious circumstances were present, court has "substantial doubts as to validity of [the defendant's] theory that the smell of burnt marijuana only gives rise to a lawful search of the passenger portion of the vehicle and not the trunk").

[3]The status of *Wimberly* v. *Superior Court*, 16 Cal. 3d 557 (1976), is uncertain. Although it has not been expressly repudiated by the Supreme Court of California, several decisions of the Court of Appeal in that State have treated it as abrogated by the United States Supreme Court's decision in *United States* v. *Ross*, 456 U.S. 798, 825 (1982), holding that probable cause to search a vehicle extends to any area where contraband might reasonably be found. See *People* v. *Hunter*, 133 Cal. App. 4th 371, 379-380 (2005) ("we do not think [the holding of *Wimberly* has] continued vitality"); *People* v. *Dey*,

been smoking the drug; because this is an indication of use of the drug only, police lack probable cause to believe that the vehicle's occupants are transporting large quantities of it, and there is no justification for opening the trunk.

This reasoning departs from reality in several respects. First, it relies on the unfounded assumption that dealers do not use, and users do not deal. Second, it presupposes that someone who has recently been smoking marijuana, whether user or dealer, would not also be transporting or storing it in an automobile trunk. That assumption is also questionable; one who smokes marijuana openly in a car (or, for that matter, covertly before entering a car) might very well also store it in the trunk. See *Wilson* v. *State, supra* at 455. Third, that "it is unreasonable to believe people smoke marijuana in the trunks of cars," *ante* at 52, quoting *United States* v. *Wald, supra,* is true but irrelevant. The crime is *possession* of marijuana, and what determines the scope of the search is not where the marijuana might have been smoked but where more of it might be secreted. Contrast *Commonwealth* v. *White,* 374 Mass. 132, 141-142 (1977), aff'd, 439 U.S. 280 (1978) (where police had probable cause only to believe defendant was driving while intoxicated, no probable cause to search vehicle). More important, the distinction between using and dealing is one without difference. Either is an offense and provides probable cause to believe a crime has been committed.

The court's holding places an undue burden on police officers by asking them to ignore common sense and to make a judgment that is unnecessary at this stage of the inquiry. Where officers have sufficient reason to believe a person is in possession of a controlled substance, whether that person is a dealer or "merely" a user is irrelevant to the issue of probable cause. An officer should not be required to make fine distinctions as to the likelihood that a suspect was carrying contraband only in the passenger compartment as opposed to having it stored in other parts of the car. "It is not unreasonable for an officer to believe that the odor of burnt marijuana indicates current possession of un-

84 Cal. App. 4th 1318, 1321-1322 (2000), cert. denied, 534 U.S. 869 (2001) (same). In both those cases, however, police found a small quantity of marijuana in the passenger compartment before searching the trunk. See *People* v. *Hunter, supra* at 375; *People* v. *Dey, supra* at 1320.

smoked marijuana somewhere inside of the vehicle, including the trunk. That belief reasonably applies to both traffickers and users because simple possession is a crime." (Footnote omitted.) *Wilson* v. *State, supra* at 455.

To allow a search of the trunk in these circumstances is not, as the court suggests, to hold that "where automobiles are concerned, the general rule that officers limit their search to those locations where the objects of the search might reasonably be found is somehow suspended." *Ante* at 52. It is merely to allow officers to use their training, experience, and common sense in determining where contraband might reasonably be found in an automobile. See *Commonwealth* v. *Cast*, 407 Mass. 891, 895 (1990) (probable cause determinations deal with "the factual and practical considerations of everyday life").

This is not a case where the police had probable cause to believe that contraband was contained only in one place and not in any other. "The location-specific principle that 'probable cause must be tailored to specific compartments and containers within an automobile' . . . does not apply when officers have only probable cause to believe that contraband is located somewhere within the vehicle, rather than in a specific compartment or container within the vehicle." *Wilson* v. *State, supra* at 454, quoting *United States* v. *Carter*, 300 F.3d 415, 422 (4th Cir.), cert. denied sub nom. *McRae* v. *United States*, 537 U.S. 1065 (2002), and cert. denied, 537 U.S. 1187 (2003). Here, the officers had probable cause to believe that contraband would be found somewhere in the vehicle, and they should have been permitted to search for it in any part of the vehicle where it might be found. For these reasons, I respectfully dissent.