COMMONWEALTH *vs.* CLINT DANIEL & another.[1]

No. 10-P-1495.

Suffolk. December 6, 2011. - February 16, 2012.

Present: GRASSO, COHEN, & CARHART, JJ.

Further appellate review granted, 462 Mass. 1101 (2012).

*Practice, Criminal,* Motion to suppress. *Controlled Substances. Search and Seizure,* Motor vehicle, Probable cause, Protective frisk. *Constitutional Law,* Search and seizure, Probable cause.

A Boston Municipal Court judge erred in allowing a criminal defendant's motion to suppress a firearm discovered in the glove box of an automobile in which he was a passenger when it was stopped by a police officer, where the judge's findings established that the search was justified under the automobile exception to the warrant requirement, in that the officer had probable cause to believe that the defendant and the driver consumed marijuana while the vehicle was moving, that the driver's capacity to operate was impaired thereby, that the driver's negligent operation endangered the lives and safety of the public, and that additional marijuana and evidence of recent marijuana use could be found inside the passenger compartment, including the glove box [310-314]; and where the judge's findings established that the officer's observations of the defendant raised reasonable safety concerns and warranted the officer's ordering the defendant from the vehicle, frisking him for weapons, and extending that protective frisk into the glove box [315-316].

COMPLAINTS received and sworn to in the Boston Municipal Court Department on December 18, 2009.

Pretrial motions to suppress evidence were heard by *Tracy-Lee Lyons*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Ralph D. Gants*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Zachary Hillman*, Assistant District Attorney, for the Commonwealth.

[1]Alyson Tayetto.

*Tim Brown,* Committee for Public Counsel Services, for the defendants.

GRASSO, J. Does a lawful stop of a motor vehicle for moving violations, the observation of a noticeable odor of freshly-burnt marijuana in the passenger compartment, and the recovery of two packages of marijuana from the driver authorize a police officer to do more than was permitted in *Commonwealth* v. *Cruz,* 459 Mass. 459 (2011)? We believe so. Accordingly, we reverse an order allowing the defendants' motions to suppress a loaded firearm discovered inside the vehicle's glove box.

1. *Background.* Charged with multiple firearm offenses,[2] the defendants Clint Daniel and Alyson Tayetto moved to suppress the loaded firearm discovered in the glove box of a vehicle in which Tayetto was the operator and Daniel the passenger. A judge of the Boston Municipal Court allowed the defendants' motions. The judge concluded that in light of recently-passed legislation that decriminalized the possession of less than one ounce of marijuana, the police lacked probable cause to search the vehicle for marijuana.[3] Compare *Commonwealth* v. *Garden,* 451 Mass. 43, 47 (2008) (odor of freshly burnt marijuana provides probable cause to search vehicle's occupants and its passenger compartment). The judge also concluded that the officer lacked justification to frisk the defendants and search the vehicle itself. See *Commonwealth* v. *Gonsalves,* 429 Mass. 658, 663 (1999).

A single justice of the Supreme Judicial Court allowed the Commonwealth's application for an interlocutory appeal from the allowance of the defendants' motions and reported it to this court for resolution. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996). For the reasons that follow, we reverse the order of suppression.

---

[2]The charges include carrying a firearm without a license (G. L. c. 269, § 10[*a*])); receiving a firearm with a defaced serial number (G. L. c. 269, § 11C); possession of ammunition without a firearm identification card (G. L. c. 269, § 10[*h*]); possession of a large capacity weapon and large capacity feeding device (G. L. c. 269, § 10F); and possession of a loaded firearm (G. L. c. 269, § 10[*n*]).

Tayetto also received citations for the civil motor vehicle infractions of operating with improper headlights, improper turning, and failing to keep to the right of the way in stopping.

[3]In ruling, the judge did not have the benefit of *Commonwealth* v. *Cruz, supra,* discussed *infra.*

2. *Facts.* Mindful that assessment of witness credibility is the province of the motion judge, we summarize the facts found by the motion judge, supplemented with uncontested testimony from the suppression hearing that the judge explicitly or implicitly credited. See *Commonwealth* v. *Isaiah I.,* 448 Mass. 334, 337 (2007); *Commonwealth* v. *Johnson,* 461 Mass. 44, 48 (2011). On December 13, 2009, at 3:40 A.M., Boston police Officer Paul DeLeo, Jr., was patrolling alone, in a marked cruiser, on Adams Street in the Dorchester section of Boston. As he approached the intersection of Adams and East Streets, DeLeo noticed a Toyota sports utility vehicle without a functioning driver's-side headlight approaching from the opposite direction. When it reached the intersection, the Toyota made an abrupt left turn, passing directly in front of DeLeo's cruiser onto East Street without using a directional signal.

DeLeo turned onto East Street, drove behind the Toyota, and activated the cruiser's overhead blue lights as a signal for the Toyota to pull over. In response, the operator applied the brakes and brought the Toyota to an abrupt stop in the middle of the travel lane, almost causing DeLeo to strike the rear end of the vehicle.

DeLeo exited his cruiser and approached the passenger side of the vehicle, his customary practice in motor vehicle stops. As he crossed in front of the driver's side of his cruiser and approached the Toyota, DeLeo noted that the passenger, later identified as Daniel, was leaning over and rocking his shoulders back and forth. Daniel's head was down, and his hands were not visible to DeLeo.

When he reached the passenger side of the Toyota, DeLeo observed that the passenger window was rolled down and Daniel was now sitting upright. DeLeo also immediately noticed the odor of freshly burnt marijuana emanating from the open passenger window. A member of the drug control unit, DeLeo recognized the odor as marijuana from numerous previous arrests, including arrests of people smoking marijuana directly in front of him.[4]

---

[4]Although DeLeo described the odor as "moderate to strong" and the judge referenced DeLeo's characterization in her analysis, she made no specific finding in that regard. The judge's findings suffice to establish that DeLeo immediately detected an odor of "freshly burnt" marijuana emanating from the vehicle.

The odor of marijuana prompted DeLeo to ask the vehicle's occupants if they had been smoking marijuana in the vehicle, or at any point.[5] In response, the occupants responded that they had been to a party where other people were smoking marijuana, which probably accounted for the smell DeLeo was noticing. Unconvinced by the reply, DeLeo asked both Daniel and Tayetto if they had any marijuana on their person or in the vehicle. Daniel did nothing in response to DeLeo's query, but Tayetto acknowledged that she had marijuana on her person and produced two small glassine baggies of marijuana from her clothing. De-Leo instructed her to put the baggies on the dashboard.[6]

DeLeo then asked both occupants if they had any other drugs in the car.[7] In response, Daniel said, "This is all I got," and without prompting from DeLeo, proceeded to empty his pockets, putting a passport, keys, and a black folding knife on the dashboard. DeLeo considered Daniel's behavior significant because in his experience, "It's not common that someone voluntarily produces all the contents of their pockets . . . onto a dashboard."

Because the Toyota had stopped in the middle of East Street, a single lane side street with room for only one vehicle in the travel lane, other vehicles were beginning to back up. DeLeo instructed Tayetto to move the vehicle to the side of the street onto the sidewalk. While she complied, DeLeo returned to his cruiser and moved it out of the travel lane.

Within a matter of seconds, DeLeo returned to the passenger side of the Toyota and ordered Daniel out. Standing between the vehicle and its open door, DeLeo searched Daniel from head to toe for drugs and weapons.[8] Finding nothing of concern, DeLeo brought Daniel to the front of the cruiser, sat him down

---

[5]DeLeo testified that prior to inquiring about the odor of marijuana, he questioned Daniel about his movements as DeLeo approached and that Daniel denied making any movements. The judge made no factual finding crediting or discrediting DeLeo's testimony in that regard.

[6]Subsequently, Tayetto received a civil citation for marijuana possession.

[7]Although DeLeo testified that he asked "if there was anything of concern" in the vehicle, the judge's findings characterize DeLeo's testimony as asking if there were "any other drugs." Nothing turns on the difference.

[8]The uncontested testimony establishes that the judge reversed the order of the searches in her supplemental findings, erroneously stating that DeLeo searched Tayetto first and then Daniel. The reversal is inconsequential.

on the bumper, and instructed him not to move. DeLeo then returned to the driver's side of the Toyota and ordered Tayetto to get out. He performed a search of her person "as best he could," making sure there was nothing in her waistband, the pockets of her pants and jacket, and her ankle area. Finding nothing of significance, he ordered Tayetto to sit on the front steps of 33 East Street.

DeLeo then walked to the passenger side of the Toyota, where he opened the glove box and discovered a loaded semi-automatic pistol. Upon discovering the pistol, he drew his revolver, ordered the defendants to the ground, and called for backup. Both defendants were unlicensed to carry a handgun and were subsequently arrested.

3. *Discussion.* In reviewing a lower court's determination upon a motion to suppress evidence, "[W]e accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [her] ultimate findings and conclusions of law.' " *Commonwealth* v. *Costa*, 65 Mass. App. Ct. 227, 229-230 (2005), quoting from *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004). Our duty is to determine "the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996). Because Officer DeLeo acted without the authority of a search warrant, the Commonwealth bears the burden of demonstrating that his actions were within constitutional limits. See *Commonwealth* v. *Johnson*, 461 Mass. at 48-49. The Commonwealth has done so because the judge's factual findings establish that DeLeo's discovery of the firearm inside the glove box was justified under the motor vehicle exception to the search warrant requirement, see *Commonwealth* v. *Motta*, 424 Mass. 117, 124 (1997), and alternatively because of reasonable concerns for officer safety. See *Commonwealth* v. *Mercado*, *supra* at 369-370. We consider each in turn.[9]

Our analysis begins with *Commonwealth* v. *Cruz*, 459 Mass.

---

[9]The defendants properly do not challenge the initial stop of the vehicle for observed motor vehicle violations, see *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980), or DeLeo's inquiring whether the vehicle's occupants had been smoking marijuana. See *Commonwealth* v. *Cruz*, 459 Mass. at 466 (asking individual whether he had been smoking marijuana permissible because officer could potentially have issued a civil citation).

at 463-477, in which the Supreme Judicial Court considered the implications of a referendum that decriminalized the possession of an ounce or less of marijuana upon search and seizure jurisprudence.[10] There, police investigating a motor vehicle parked at a fire hydrant, a civil violation, observed a man sitting in the driver's seat lighting a type of cigar known to mask the odor of marijuana, and a second individual in the passenger seat. Based only upon a "faint odor" of burnt marijuana (something the man in the driver's seat acknowledged he had smoked earlier in the day) and the nervousness of the vehicle's occupants, the police ordered both men from the vehicle and subsequently discovered cocaine on the passenger.

In affirming a lower court order suppressing the cocaine, *Cruz* reasoned that, "Although we have held in the past that the odor of marijuana alone provides probable cause to believe criminal activity is underway, . . . we now reconsider our jurisprudence in light of the change to our laws." *Id.* at 464. Given the changed "status of possessing one ounce or less of marijuana from a crime to a civil violation, without at least some other additional fact to bolster a reasonable suspicion of actual *criminal* activity, the odor of burnt marijuana alone cannot reasonably provide suspicion of criminal activity to justify an exit order." *Id.* at 472 (emphasis original).

While acknowledging that "possession of marijuana, in any amount, remains illegal," that "decriminalization is not synonymous with legalization[,]" and that "any amount of marijuana is considered contraband," *id.* at 473, *Cruz* rejected the view adopted in some other jurisdictions that probable cause to believe that a noncriminal amount of contraband is present, standing alone, justifies a search of the vehicle under the motor vehicle exception.[11] Instead, *Cruz* held that to undertake a search pursuant to the motor vehicle exception, the police must have probable

---

[10]See St. 2008, c. 387, "An Act establishing a sensible State marihuana policy" which reduced the possession of one ounce or less or marijuana from a criminal offense to a civil infraction. The act is codified at G. L. c. 94C, §§ 32L-32N.

[11]See, e.g., *State* v. *Smalley*, 233 Or. App. 263, 270-271 (2010); *State* v. *Kurokawa-Lasciak*, 237 Or. App. 492, 499 (2010) ("probable cause to believe a mobile vehicle contained less than an ounce of marijuana justifies a warrantless automobile search because even that noncriminal amount is 'contraband' "), reversed and remanded on other grounds, 351 Or. 179 (2011).

cause to believe that a *criminal* amount of contraband is present, not merely some lesser amount. See *id.* at 476.

A. *The motor vehicle exception.* Our analysis begins with the reasoning and holding of *Cruz*, but does not end there because the criminality afoot in this case does not depend solely on the *amount* of marijuana present in the vehicle. Rather, it derives from the presence of a noticeable odor of freshly burnt marijuana inside a vehicle that was being operated in a dangerous manner on a public way by an operator who had marijuana on her person, together with a passenger who made movements in the vicinity of the glove box upon the approach of the officer. Put differently, what rendered the activities of Tayetto and Daniel criminal was not the *amount* of marijuana possessed, but their consumption of marijuana in a vehicle that was operating on the ways of the Commonwealth in a manner that put the public at considerable risk. See G. L. c. 90, §§ 24(1)(*a*)(1) (operating under the influence of marijuana), & 24(2)(*a*) (operating negligently so as to endanger the lives and safety of the public).[12]

Here there was far more to establish criminality than the faint odor of marijuana emanating from an illegally parked vehicle. First was the manner of Tayetto's operation: she operated the vehicle at night without a driver's-side headlight; made a left intersection turn in front of DeLeo's cruiser without signaling; and in response to the cruiser's blue lights, applied the brakes immediately, stopping in the middle of the travel lane. Second was the likelihood that Daniel's movements signified his hiding of contraband. As DeLeo approached, Daniel was leaning over, and rocking his shoulders back and forth with his head down. Third was the noticeable odor of freshly burnt marijuana, which suggested an immediate explanation for Tayetto's erratic operation, followed by an explanation for the odor that DeLeo was free to reject as implausible given his observations, and Tayetto's quick surrender of two baggies of marijuana from her person. Viewed objectively and reasonably, and without parsing each

---

[12]Indeed, in enacting G. L. c. 94C, § 32L, third par., the voters expressly provided that "nothing contained [in the legislation decriminalizing the possession of an ounce or less of marijuana] shall be construed to repeal or modify existing laws . . . concerning the operation of motor vehicles or other actions taken while under the influence of mari[j]uana . . . ." See *Commonwealth* v. *Keefner*, 461 Mass. 507, 514-515 (2012).

individual component, these facts provided DeLeo with probable cause to believe that Tayetto and Daniel were engaged in the consumption of marijuana in a moving vehicle, that Tayetto's capacity to operate was impaired thereby, that Tayetto's negligent operation endangered the lives and safety of the public, and that additional marijuana and evidence of recent marijuana usage could be found inside the passenger compartment, including the glove box. See *Commonwealth* v. *Garden*, 451 Mass. at 50 ("any contraband hidden on the passengers' person easily could have been transferred to a location in the passenger compartment"). See also *Commonwealth* v. *Correia*, 66 Mass. App. Ct. 174, 177 (2006) (odor of burnt marijuana emanating from vehicle gave probable cause to search vehicle's occupants as well as vehicle for evidence of marijuana use and possession whether or not police had probable cause to arrest any particular occupant).

While it might have been preferable for DeLeo first to have made detailed observations of Tayetto's eyes or conducted field tests for additional evidence that she was operating under the influence of marijuana, his failure to do so is not fatal to the determination of probable cause. Having observed Tayetto commit three moving violations in the span of only a short distance, readily detected the odor of freshly burnt marijuana emanating from the passenger compartment, and recovered two baggies of marijuana from her person, DeLeo did not require more to establish probable cause. See *Commonwealth* v. *Blais*, 428 Mass. 294, 296 (1998) (officer's actual belief as to legal basis for authority irrelevant so long as circumstances justified actions taken). In dealing with probable cause, we deal with probabilities. These are not technical, but "the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *Commonwealth* v. *Garden*, 451 Mass. at 47, quoting from *Commonwealth* v. *Cast*, 407 Mass. 891, 895 (1990). *Commonwealth* v. *Johnson*, 461 Mass. at 49 n.6. Upon the facts here, we have no doubt that a reasonable and prudent person in DeLeo's position could conclude that Tayetto and Daniel were consuming marijuana while Tayetto was driving her vehicle, that her operation was negatively affected thereby, and that the lives and safety of the public were endangered as a result.

Officers are not required to ignore what they see, smell, or hear. *Commonwealth* v. *Bartlett*, 41 Mass. App. Ct. 468, 471 (1996). Nor does *Cruz* alter the view expressed in *Commonwealth* v. *Garden*, 451 Mass. at 48, that "the odor of marijuana is sufficiently distinctive that it alone can supply probable cause to believe that marijuana is nearby." That DeLeo chose first to search for and confiscate any additional marijuana, whether partially consumed or not, rather than subject Tayetto to field or other tests is not determinative. The requirements of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights do not require such Procrustean rigidity. Nor is the failure of DeLeo to cite or arrest Tayetto for operating under the influence of marijuana or operating to endanger determinative of the legitimacy of the ensuing search. The police are not required to make an arrest every time they have probable cause to believe that someone has committed a crime. See *Commonwealth* v. *Johnson*, 461 Mass. at 50. Rather, "[t]he issue of paramount importance is whether the police, prior to the commencement of a warrantless search, had probable cause to believe that they would find . . . 'evidence pertaining to a crime' in the vehicle." *Id.* at 49, quoting from *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 55 (1974).

Prior to the search of the glove box, DeLeo saw Tayetto driving negligently, observed a noticeable odor of freshly burnt marijuana in the vehicle, and recovered two bags of marijuana from Tayetto's person. That Tayetto had already provided some marijuana from her person did not mean that a partially consumed marijuana cigarette, an apparatus or implement of marijuana smoking, or additional marijuana was not present elsewhere inside the vehicle. See *Commonwealth* v. *Garden*, 451 Mass. at 50. In sum, DeLeo had probable cause to believe that criminal activity was afoot and that evidence of that criminality would be found inside the vehicle. See *Commonwealth* v. *Motta*, 424 Mass. at 124 (when automobile stopped in public place with probable cause, no more exigent circumstances are required by art. 14 beyond inherent mobility of automobile itself to justify a warrantless search of the vehicle); *Commonwealth* v. *Eggleston*, 453 Mass. 554, 557 (2009).[13]

---

[13]We need not decide whether, even absent the criminality present here, DeLeo could have lawfully searched for and seized any remaining contraband

B. *A protective frisk.* The judge's factual findings also establish that DeLeo made observations particular to Daniel that raised reasonable safety concerns and warranted DeLeo in ordering Daniel from the vehicle, frisking him for weapons, and extending that protective frisk into the vehicle's glove box.[14] To the facts previously discussed regarding the consumption and presence of marijuana in the vehicle we add and emphasize these. DeLeo was patrolling alone. While approaching the vehicle, he observed that Daniel's shoulders were moving back and forth, his head was forward, and his hands were out of view. After not responding to DeLeo's initial query, Daniel responded to DeLeo's follow-up question by emptying his pockets onto the dashboard without being commanded to do so, producing a pocket knife among other items. In DeLeo's experience, such behavior was odd. Nor was DeLeo required to take Daniel at his word that the pocket knife was all he had. Especially was this so given Daniel's proximity to the glove box and movements prior to DeLeo's approach.

While an officer must have a reasonable apprehension of danger before ordering a passenger from the vehicle and conduct-

___

before permitting Tayetto and Daniel to be on their way given their proclivity to consume it within a moving vehicle. See *Commonwealth* v. *Murdough*, 428 Mass. 760, 764 (1999). Nothing in the referendum decriminalizing possession of small amounts of marijuana reflects the will of the public to permit the consumption of marijuana on the roads of the Commonwealth by drivers and passengers in moving vehicles. The contrary is true. See *Commonwealth* v. *Keefner*, 461 Mass. at 514-515.

The touchstone of Fourth Amendment and art. 14 jurisprudence is "reasonableness," see *Commonwealth* v. *Cruz*, 459 Mass. at 472, and if reasonableness is to mean anything, surely it allows a police officer to ascertain that a driver who is smoking marijuana while operating and is cited for moving violations will not be able to resume operation of the vehicle with a supply of contraband still available for further consumption. See *Commonwealth* v. *Blais*, 428 Mass. at 298 (an "[impaired] driver let loose on the highways is a deadly menace, not only to the officer, but also to anyone sharing the highways with him").

[14]In reaching this conclusion, we attach no significance to the judge's finding that discredits DeLeo's testimonial assertion that he was in fear for his safety. The objective circumstances control, not DeLeo's subjective intention or concerns. So long as the officer's actions are objectively reasonable under the circumstances, his subjective intentions and fears are as irrelevant as an unreasonable bravado would be. See *Commonwealth* v. *Cruz*, 459 Mass. at 462 n.7. See also *Whren* v. *United States*, 517 U.S. 806, 812 (1996); *Commonwealth* v. *Murdough*, 428 Mass. at 762, 765.

ing a pat frisk for safety, "it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns." *Commonwealth* v. *Gonsalves,* 429 Mass. at 664. Even "seemingly innocent activities taken together can give rise to reasonable suspicion." *Commonwealth* v. *Grandison,* 433 Mass. 135, 139 (2001), quoting from *Commonwealth* v. *Watson,* 430 Mass. 725, 729 (2001). In view of all the circumstances, and especially Daniel's movements and proximity to the glove box, it was not unreasonable for DeLeo to order Daniel out of the vehicle, frisk him, and extend that frisk to a search of the glove box. See *Commonwealth* v. *Stampley,* 437 Mass. 323, 328-329 (2002); *Commonwealth* v. *Graham,* 78 Mass. App. Ct. 127, 129 (2010) (*Terry*-type search of vehicle's interior, including glove box, justified by reasonable concern for officer safety).

*Order allowing motion to suppress reversed.*