## Commonwealth *vs.* Sergio V. Lobo.

No. 12-P-45.

Plymouth. October 4, 2012. - November 21, 2012.

Present: Grasso, Fecteau, & Agnes, JJ.

*Controlled Substances. Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Probable cause, Inevitable discovery, Threshold police inquiry. *Probable Cause. Threshold Police Inquiry. Evidence,* Expert opinion. *Witness,* Expert. *Practice, Criminal,* Motion to suppress, Instructions to jury.

A Superior Court judge properly denied the criminal defendant's pretrial motion to suppress "crack" cocaine seized from him following a stop of the vehicle in which he was a passenger, where, although the police officer who stopped the vehicle improperly ordered the defendant out of the vehicle based solely on an odor of freshly burnt marijuana and without reasonable suspicion that more than one ounce of marijuana was present, the initial stop of the vehicle was proper and the immediate observation that none of the vehicle's occupants was wearing a seat belt provided a basis to cite, and to demand identification from, all the vehicle's occupants (including the defendant) for a violation of the seat belt law, which provided an independent source for discovery of the outstanding warrants against the defendant, his arrest on those warrants, and the certainty as a practical matter of the discovery of the cocaine. [806-810]

At the trial of an indictment charging the defendant with trafficking in cocaine in an amount of more than fourteen grams but less than twenty-eight grams, no miscarriage of justice arose from the admission in evidence of expert testimony from a police officer regarding "crack" cocaine, and the judge properly instructed the jury regarding the officer's testimony [810-811]; further, the evidence was sufficient to establish that the defendant possessed the cocaine with the intent to distribute it [811].

Indictment found and returned in the Superior Court Department on March 20, 2009.

A pretrial motion to suppress evidence was heard by *Joseph M. Walker, III,* J., and the case was tried before *Richard J. Chin,* J.

*Laura Chrismer Edmonds* for the defendant.

804         82 Mass. App. Ct. 803 (2012)

Commonwealth *v.* Lobo.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. The primary issue in this case arises from the change in our jurisprudence following the referendum that decriminalized the possession of one ounce or less of marijuana.[1] See *Commonwealth* v. *Cruz,* 459 Mass. 459, 469-471 (2011); *Commonwealth* v. *Keefner,* 461 Mass. 507, 508 (2012); *Commonwealth* v. *Daniel,* 81 Mass. App. Ct. 306, 310-312, further appellate review granted, 462 Mass. 1101 (2012). On appeal from a conviction of trafficking in cocaine in an amount of fourteen grams or more but less than twenty-eight grams, see G. L. c. 94C, § 32E(*b*)(1), the defendant contends that (1) the motion judge erred in denying his motion to suppress evidence, (2) a substantial risk of a miscarriage of justice arose from the introduction of expert testimony, and (3) the Commonwealth presented insufficient evidence of an intent to distribute. We affirm.

1. *The motion to suppress.* We summarize the motion judge's findings of fact, supplementing with uncontested testimony from the suppression hearing that the judge explicitly or implicitly credited. See *Commonwealth* v. *Isaiah I.,* 448 Mass. 334, 337 (2007). On January 15, 2009, at about 7:00 P.M., State police Sergeant Steven Lopes and Trooper Stephen Connolly were on routine patrol in Brockton. While so engaged, Lopes observed a gray Honda automobile make a quick right turn from North Montello Street onto Linden Street without signaling. Lopes saw the Honda make a second quick turn into a gasoline station, again without signaling. Connolly activated the cruiser's blue lights and pulled up to the Honda, which was already stopped near the station's bays.

Leaving the cruiser, Lopes approached the passenger side of the Honda, and Connolly the driver's side. As Lopes approached, he observed that the Honda contained three individuals, none of whom was wearing a seat belt. An individual later identified as

---

[1] See St. 2008, c. 387, "An Act establishing a sensible State marihuana policy," which reduced the possession of one ounce or less of marijuana from a criminal offense to a civil infraction. The Act is codified at G. L. c. 94C, §§ 32L-32N.

Manu Nogueira occupied the driver's seat,[2] Jacqueline Delgado the front passenger seat, and the defendant the rear passenger seat. As Lopes stood at the open passenger window, he noticed an odor of freshly burnt marijuana coming from inside the vehicle.[3] Lopes was familiar with, and had received training in, the odor of marijuana.

Before asking Nogueira for his license and registration, inquiring about the odor of marijuana or the failure to wear seat belts, or asking anyone to provide identification, Lopes ordered the three occupants out of the vehicle.[4] In explanation, Lopes told them that he was doing so because he smelled marijuana. As the defendant stepped out of the vehicle, he told Lopes that he had a small amount of marijuana on his person and gave it to Lopes.[5] Lopes then obtained identification from the defendant and conducted a warrant check that revealed two active criminal warrants for the defendant's arrest for drug offenses. After Nogueira and Delgado stepped from the vehicle and the defendant handed the marijuana to Lopes, Lopes and Connolly pat-frisked all the vehicle's occupants, searched the vehicle, and found no additional marijuana or evidence that marijuana had been smoked there recently.

Lopes arrested the defendant on the outstanding warrants, advised him of his Miranda rights,[6] and placed him in the cruiser of Brockton police Officer Willis, who had recently arrived. Meanwhile, State police Trooper Eric Telford, responding to a radio transmission regarding the stop, arrived at the gasoline

[2]The officers later issued a civil citation to Nogueira for failing to signal when turning. In his testimony, Nogueira conceded that he did not have his signal on and could not recall using it.

[3]The defendant later acknowledged to State police Trooper Eric Telford that he had smoked marijuana. In their testimony, Nogueira and Delgado acknowledged that marijuana had been smoked in the vehicle one or two hours earlier.

[4]The defendant testified at the motion hearing and acknowledged that he was not wearing a seat belt. Neither Nogueira, Delgado, nor the defendant was ever cited for failing to wear a seat belt. See G. L. c. 90, § 13A.

[5]The marijuana, which was wrapped in clear plastic, was "a very small amount," unquestionably less than one ounce. The defendant did not receive a civil citation for marijuana possession.

[6]The defendant does not challenge the judge's determination that he received and waived his Miranda rights and that his statements were freely and voluntarily made.

station accompanied by Special Agent Brian Zinn of the Federal Bureau of Investigation. Telford was very familiar with Nogueira and with the Honda from Telford's participation in a Federal drug investigation involving "crack" cocaine deliveries in the spring of 2008. After speaking briefly with Lopes, Telford approached and spoke with the defendant. Telford told the defendant that the police believed the Honda was involved in crack cocaine sales, that the outstanding warrants for the defendant's arrest involved drugs, and that the defendant was going to be searched thoroughly at the police station. Telford also told the defendant that "if he wanted to . . . advise us of anything that might be hidden on his person," it would avoid the need for a more intrusive search. The defendant responded that he had an amount of crack cocaine hidden in his crotch area, "under his balls," and he thought it amounted to about five grams.

Telford related this to Willis and told Willis that the defendant himself would be permitted to take the cocaine out and surrender it once they were at the Brockton police department garage. At the garage, Telford observed the defendant reach into his crotch area and remove a bag of crack cocaine, later determined to weigh over twenty-one grams. The defendant told Telford that he had been smoking marijuana and that the crack cocaine had been on his person when Lopes first put him in the cruiser.

On these facts, the motion judge concluded that the odor of freshly burnt marijuana provided grounds to order the defendant from the vehicle and probable cause to search him and the vehicle. The judge reasoned further that the defendant's voluntary surrender of the small amount of marijuana on his person and the outstanding default warrants for the defendant's arrest provided separate bases to arrest and search the defendant incident to his arrest, and that discovery of crack cocaine hidden on the defendant's person was inevitable as a practical matter given that a more thorough search of the defendant's person was to occur at the police station.

The motion judge did not err in denying the defendant's motion to suppress, although in reaching that conclusion we rely on grounds different from those relied on by the judge. See *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997)

(appellate court may affirm on grounds different from motion judge provided correct or preferred basis supported by record and factual findings); *Commonwealth* v. *Cruz*, 430 Mass. 838, 844 (2000). On the facts found, we conclude that the exit order to the defendant was improper, but the discovery of the defendant's identity, the outstanding warrants for his arrest, and the arrest itself arose from a source independent of the improper exit order. See *Commonwealth* v. *Damiano*, 444 Mass. 444, 453-454 (2005). Because the police had a lawful basis to cite the defendant for a seat belt violation, and request and obtain his identification attendant to that civil violation, the discovery of his identity and the outstanding warrants for his arrest were not an exploitation of the unlawful exit order. See *Commonwealth* v. *Santana*, 420 Mass. 205, 207-209 (1995) (Massachusetts follows "authorization" approach wherein stop is valid so long as police are doing no more than they are legally permitted and objectively authorized to do); *Commonwealth* v. *Cruz*, 459 Mass. at 462 n.7; *Commonwealth* v. *Daniel*, 81 Mass. App. Ct. at 315 n.14. Given the outstanding arrest warrants, we agree with the motion judge that discovery of the crack cocaine on the defendant's person was inevitable as a practical matter. See *Commonwealth* v. *Perrot*, 407 Mass. 539, 546-547 (1990).

We begin our analysis by noting the anomalous posture of the case. The marijuana decriminalization law took effect on December 4, 2008, and the incident at issue occurred on January 15, 2009, a little more than one month later. Prior to the decision in *Commonwealth* v. *Cruz, supra*, the odor of freshly burnt marijuana inside a motor vehicle provided probable cause to search the passengers and passenger compartment of the vehicle. See *Commonwealth* v. *Garden*, 451 Mass. 43, 49-53 (2008); *Commonwealth* v. *Laskoski*, 74 Mass. App. Ct. 858, 861-862 (2009); *Commonwealth* v. *Velez*, 77 Mass. App. Ct. 270, 274-275 (2010). Given the state of the law at the time of the stop, Lopes can hardly be faulted for failing to follow the later instruction of *Commonwealth* v. *Cruz*.[7] Nevertheless, Massachusetts does not recognize the "good faith exception" to the

---

[7]The motion judge also did not have the benefit of *Cruz* when he concluded that the odor of freshly burnt marijuana provided Lopes probable cause to search the passengers and the passenger compartment.

exclusionary rule. "We have not adopted the 'good faith' exception for purposes of art. 14 of the Massachusetts Declaration of Rights or statutory violations, focusing instead on whether the violations are substantial and prejudicial." *Commonwealth* v. *Hernandez*, 456 Mass. 528, 533 (2010). Accordingly, we apply to the facts found the law set forth in *Commonwealth* v. *Cruz*.

In *Commonwealth* v. *Cruz*, 459 Mass. at 469, the court announced that the marijuana decriminalization law changed our jurisprudence, and the odor of freshly burnt marijuana, without more, no longer provides probable cause, or even reasonable suspicion, that a criminal amount of marijuana is present. Absent a factual basis to believe that more than an ounce of marijuana is present, the odor of freshly burnt marijuana, by itself, signifies only infractionary conduct, not criminal behavior. See *ibid.*

*Commonwealth* v. *Cruz* also reemphasized that art. 14 of the Massachusetts Declaration of Rights recognizes three bases for issuing an exit order to a driver or a passenger in a routine motor vehicle stop: (1) particularized reasonable suspicion of criminal activity; (2) reasonable apprehension of danger to the police or others; or (3) "pragmatic reasons." *Id.* at 466-467. Compare *Pennsylvania* v. *Mimms*, 434 U.S. 106, 109-110 (1977) (under Fourth Amendment to United States Constitution officers may issue exit order to driver of stopped motor vehicle as routine practice); *Maryland* v. *Wilson*, 519 U.S. 408, 414-415 (1997) (same applies to passengers). None of these justifications applied when Lopes issued the exit order. Nothing in the facts supports safety concerns or establishes pragmatic reasons for the exit order. Moreover, nothing in the facts suggests that criminal rather than merely infractionary conduct was occurring. Compare *Commonwealth* v. *Daniel*, 81 Mass. App. Ct. at 312-213. Because Lopes issued the exit order based solely on an odor of freshly burnt marijuana and without reasonable suspicion that more than one ounce of marijuana was present, the exit order was improper. See *Commonwealth* v. *Cruz*, *supra* at 469. Nevertheless, exclusion is not required in these circumstances.

The initial stop of the Honda for failing to signal when turning was proper. See *Commonwealth* v. *Avellar*, 70 Mass. App. Ct. 608, 613 (2007) (failing to signal is civil motor vehicle violation under G. L. c. 90, § 14B). Moreover, the immediate

observation that none of the occupants was wearing a seat belt provided a basis to cite, and demand identification from, all the vehicle's occupants, including the defendant, for a seat belt law violation. See *Commonwealth* v. *Goewey*, 452 Mass. 399, 405-406 (2008); *Commonwealth* v. *Washington*, 459 Mass. 32, 38-39 (2011) (police may demand identification from passenger if probable cause to believe passenger not wearing seat belt).

That Lopes ordered the defendant from the vehicle based solely upon the odor of freshly burnt marijuana and frisked him did not vitiate Lopes's authority to cite, and request identification from, the defendant for a seat belt violation.[8] The lawful authority to do so provided an independent source for requesting the defendant's identification and discovering the outstanding warrants that was untainted by the improper exit order and not an exploitation of it. Although the exit order was unlawful, there was no causal relationship between that order and the defendant's arrest on outstanding warrants that ensued, and hence, exclusion of that evidence is not warranted. See *Commonwealth* v. *DeJesus*, 439 Mass. 616, 627-628 (2003); *Commonwealth* v. *McAfee*, 63 Mass. App. Ct. 467, 481 (2005).

Given the outstanding warrants for the defendant's arrest, discovery of the crack cocaine on his person was certain as a practical matter and admissible under the inevitable discovery rule. See *Commonwealth* v. *Perrot*, 407 Mass. at 546-547 (under art. 14, inevitable discovery rule focuses first on question of inevitability, and second on character of police misconduct). The motion judge found, and we agree, that the defendant's arrest rendered the search of his person and discovery of the crack cocaine by lawful means "certain as a practical matter." *Id.* at 547, quoting from *Commonwealth* v. *O'Connor*, 406 Mass. 112, 117 (1989). See *Commonwealth* v. *Balicki*, 436 Mass. 1, 16-17 (2002); *Commonwealth* v. *Streeter*, 71 Mass. App. Ct. 430, 440 (2008). There is no indication that the police here acted in bad faith to accelerate the discovery of the evidence

---

[8]Indeed, given the odor of freshly burnt marijuana, Lopes also had basis to inquire whether the vehicle's occupants had been smoking marijuana and to inquire regarding the defendant's identification. See *Commonwealth* v. *Cruz*, 459 Mass. at 466 (asking whether individual had been smoking marijuana permissible because officer could potentially have issued civil citation).

through an unconstitutional shortcut. See *Commonwealth* v. *Mc-Afee, supra* at 481. Moreover, far from acting in bad faith, the police were simply doing what a reasonable view of the existing case law allowed them to do prior to the decision in *Commonwealth* v. *Cruz, supra.* See *Commonwealth* v. *McAfee, supra.* In these circumstances, the constitutional violations arising from the improper exit order were not so substantial and prejudicial as to warrant exclusion. Compare *Commonwealth* v. *Hernandez,* 456 Mass. at 533. See *Commonwealth* v. *Beldotti,* 409 Mass. 553, 559 (1991).

2. *The expert testimony.* There is no merit to the defendant's claim that various aspects of the trial testimony of Brockton police Detective Thomas Keating gave rise to a substantial risk of a miscarriage of justice. Without objection, Detective Keating provided expert testimony regarding crack cocaine and its addictive properties, the physical symptoms of addiction, the need for addicts to use crack immediately, how crack is smoked and cannot be snorted, the significance of the absence of smoking materials, the common methods that dealers use to hide cocaine, and how such methods differ from those of addicts. Keating also apprised the jury regarding the differing dollar values of crack cocaine sold in bulk and on the street, and testified that twenty-one grams is considered "a large amount." He stated that twenty-one grams of crack would be worth $2,100 if broken up and sold on the street, and approximately $900 to $1,000 in bulk. In answer to hypothetical questions, Keating opined that the presence on a person of twenty-two grams of crack cocaine hidden in his "private parts" and the absence of smoking paraphernalia was more consistent with distribution than with personal use. The subject and manner of his testimony was proper. See *Commonwealth* v. *Woods,* 419 Mass. 366, 375-376 (1995).

The judge instructed the jury regarding the expert's testimony in the terms recommended in *Commonwealth* v. *Hinds,* 450 Mass. 1, 12 & n.6 (2007) (noting jurors may reject expert's opinion if assumed facts differ from jury's determination). Contrary to the defendant's claim, there is no requirement that such instruction be given contemporaneously with the expert's testimony, much less sua sponte, without request from the defend-

ant. See *Commonwealth* v. *Iago I.*, 77 Mass. App. Ct. 327, 331 (2010).[9]

3. *Sufficiency of the evidence.* Viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the evidence and reasonable inferences sufficed to establish that the defendant possessed the crack cocaine found on his person with the "intent to distribute" it.[10] The amount of the crack cocaine found, its single packaging, its value (the defendant was unemployed), the location in which it was secreted, the lack of smoking devices or implements for consumption or personal use, and Detective Keating's expert opinion that the relevant indicia were more consistent with distribution rather than personal use amply established the requisite intent to distribute. See *Commonwealth* v. *Gollman*, 436 Mass. 111, 116-117 (2002).

*Judgment affirmed.*

---

[9]We have considered and rejected the claim, made for the first time on appeal, that the Commonwealth failed to disclose that Keating would offer expert testimony. The claim of surprise rings hollow given the inclusion of Keating on the Commonwealth's witness list, the prosecutor's reference to Keating's expertise and presence as a nonpercipient witness in his opening statement, and defense counsel's lack of objection.

[10]The defendant properly concedes that he was in actual possession of the crack cocaine and that the amount in question (21.4 grams) satisfies the statutory requisite for trafficking in fourteen grams or more but less than twenty-eight grams.