NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-843

COMMONWEALTH

vs.

AARON GASQUE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant of trafficking in methamphetamine, eighteen grams or more, in violation of G. L. c. 94C, § 32E (b) (1), and possession of marijuana with intent to distribute.[1] In these consolidated appeals,[2] the defendant argues that his conviction of trafficking in methamphetamine should be vacated because what the Commonwealth attempted to prove at trial was that he distributed MDMA -- 3,4-methylenedioxy methamphetamine, see G. L. c. 94C, § 31, Class B (a) (8) -- a substance that cannot be the basis of

---

[1] The defendant later pleaded guilty to the second or subsequent offense portion of the marijuana indictment.

[2] After the defendant appealed from his convictions, he sought, and was granted, a stay of appellate proceedings to pursue a motion for reconsideration of the trial judge's denial of his motion for a required finding of not guilty. The trial judge denied the motion for reconsideration, and the defendant filed a second notice of appeal. The appeals were then consolidated.

a conviction under G. L. c. 94C, § 32E (b) (1).  He also argues that there was insufficient evidence to prove that he possessed any of the substances in question.  We affirm.

Background.  We summarize the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  On June 13, 2019, Ware police were conducting surveillance on a two-unit residential building, in anticipation of executing a search warrant on the second-floor unit.  At about 5 or 6 P.M., they saw the defendant enter the building and then leave on foot twenty to thirty minutes later.  About twenty minutes after that, the defendant returned to the building by vehicle, accompanied by the tenant of the second-floor unit, who was known to the police.

At about 8 P.M., officers approached the building to execute the warrant.  As Ware Police Sergeant Scott Lawrence approached from the front, he saw the defendant standing inside near the front door.  The defendant stood at the door for three to four seconds before retreating into the hallway.  The hallway had three egress points:  the door through which Sergeant Lawrence saw the defendant; stairs leading up to the second-floor unit; and a door on the opposite end of the hallway with stairs leading down to the basement.  The defendant was in the hallway alone and was arrested there by other officers.

2

Once the building was secured, Sergeant Lawrence went to the door leading to the basement. On the landing near the door, which was open, he saw a bag of marijuana about the size of a golf ball. Upon shining his flashlight into the basement, he saw at the bottom of the stairs two bags of similarly packaged marijuana and a third bag containing pills of multiple colors.

Sergeant Lawrence spoke to the defendant in the kitchen of the second-floor apartment, where all the occupants were being detained. As officers were escorting the defendant to another room to be searched, he stated, "I don't even know what's going on. I just got here." When Sergeant Lawrence explained that the police were executing a search warrant for illegal narcotics, the defendant responded that "he doesn't deal illegal narcotics, only . . . marijuana." The officers recovered from the defendant's pocket $590 in different denominations.

A subsequent search of the apartment uncovered an Arby's bag containing pills similar to those found in the basement and a single crystal of methamphetamine. These substances were the basis of a separate indictment charging the defendant with trafficking in methamphetamine, over 200 grams, under G. L. c. 94C, § 32E (b) (4). At the close of all evidence, the trial judge allowed the defendant's motion for a required finding of not guilty on that charge.

Discussion. 1. Chemical composition of the pills. The defendant raises a number of related arguments concerning the chemical composition of the pills found in the basement, which were the basis of his conviction of trafficking in methamphetamine under G. L. c. 94C, § 32E (b) (1). According to the defendant, the Commonwealth's theory at trial proceeded along the following lines: the pills consisted of MDMA (commonly known as Ecstasy); MDMA is a form of methamphetamine; and so the pills could support a conviction of trafficking in methamphetamine. In other words, the defendant claims that the Commonwealth equated MDMA with methamphetamine for purposes of proving the trafficking charge.

The defendant correctly observes that, if the pills were in fact comprised solely of MDMA, they would fall within the ambit of a different statute, G. L. c. 94C, § 32A (a), which generally criminalizes the distribution of Class B substances.[3] The statute under which the defendant was convicted, G. L. c. 94C, § 32E (b) (1), criminalizes the trafficking of certain Class B substances, including, as relevant here, those defined in G. L. c. 94C, § 31, Class B (c) (2). Class B (c) (2) substances are substances that "contain[] any quantity of methamphetamine, including its salts, isomers and salts of isomers," "[u]nless

---

[3] The Commonwealth originally brought an indictment under G. L. c. 94C, § 32A (a), but nol prossed it prior to trial.

4

specifically excepted or unless listed in another schedule."

G. L. c. 94C, § 31, Class B (c).  MDMA is listed in another

schedule -- see G. L. c. 94C, § 31, Class B (a) (8) (listing

"3,4-methylene dioxy methamphetamine [MDMA]") -- so for at least

this reason it is not a Class B (c) (2) substance and cannot

support a conviction under G. L. c. 94C, § 32E (b) (1).[4]

Thus, in order to sustain the conviction, the Commonwealth

had to prove that the pills consisted of methamphetamine as

defined in G. L. c. 94C, § 31, Class B (c) (2).  See

Commonwealth v. Vasquez, 456 Mass. 350, 361 (2010), quoting

Commonwealth v. McGilvery, 74 Mass. App. Ct. 508, 511 (2009)

("In a case charging a narcotics offense, the Commonwealth must

prove beyond a reasonable doubt 'that a substance is a

particular drug' because such proof is an element of the crime

charged").  We conclude that the Commonwealth met this burden.

Contrary to the defendant's characterization, the Commonwealth's

case was not premised on equating MDMA with methamphetamine.

While several of the percipient officers and the Commonwealth's

drug-distribution expert, State Trooper Stephen Bushay, referred

---

[4] A conviction under G. L. c. 94C, § 32E (b) (1), has a mandatory minimum term of incarceration in State prison of two years and a maximum term of fifteen years.  In contrast, a conviction under G. L. c. 94C, § 32A (a), is punishable by incarceration in State prison for up to ten years or in a jail or house of correction for up to two and one half years, by a fine of up to $10,000, or by both.

5

to the pills interchangeably as "MDMA," "Ecstasy," "Molly," and "methamphetamine pills," a forensic scientist from the State crime laboratory testified that the pills were tested and "found to contain methamphetamine," along with caffeine. The drug certificate, entered as an exhibit, reported the same result. This evidence was sufficient to prove that the substance in question was methamphetamine. See McGilvery, supra at 511 (Commonwealth can meet burden of proving that substance is particular drug "by chemical analysis or by circumstantial evidence").[5]

We disagree with the defendant's assertion that the Commonwealth's "chemical and circumstantial proof" equally supported two inconsistent propositions about the nature of the substance. While Trooper Bushay's testimony -- which is the circumstantial proof referred to by the defendant -- established that the appearance of the pills was consistent with MDMA, this did not put the evidence in equipoise as to the actual chemical composition of the pills. The trial judge made no finding that Trooper Bushay's experience would "permit him to give an opinion as to what drug [the] particular substance was"; and, even had

_____

[5] Consistent with the chemical analysis, the prosecutor told the jury in his opening statement that the police found "a bag of methamphetamines" in the basement and that the methamphetamines "appear[ed] to be little multicolored pills." And in his closing argument, the prosecutor noted that the pills "all tested positive for methamphetamine."

6

there been such a finding, "the knowledge and competence of [the] witness, and his lack of training in chemical analysis, [would] bear on the weight to be given to his testimony." Commonwealth v. Dawson, 399 Mass. 465, 467 (1987). See Vazquez, 456 Mass. at 365-366. Simply put, as to the issue of the chemical composition of the pills, the jury could choose to credit the testimony of the forensic scientist over that of Trooper Bushay. This is underscored by the ambiguity in Trooper Bushay's testimony on the issue -- although he recognized the pills to be consistent with the appearance of MDMA, he also testified that MDMA "has methamphetamine inside it" and agreed that the "root drug" of MDMA is methamphetamine.

For related reasons we reject the defendant's argument that the evidence was at material variance with the allegations in the indictment, in violation of art. 12 of the Declaration of Rights. "The term 'variance' generally refers to a difference between an indictment and the proof at trial." Commonwealth v. Semedo, 456 Mass. 1, 17 (2010). Here, the indictment charged the defendant with trafficking in methamphetamine, and that was what the Commonwealth sought to prove at trial. We do not agree with the defendant's characterization of the grand jury minutes as showing that the indictment had to refer to "something other than [the] pills found in the basement." Although Sergeant Lawrence testified before the grand jury that he recognized the

pills as "MDMA Ecstasy pills," he also testified that the pills "showed a positive response for methamphetamines" during an on-scene chemical analysis.[6]  In addition, after Sergeant Lawrence gave the weight of the pills as 26.85 grams, the Commonwealth explained that "the amount of it is certainly relevant" because "[i]t's the trafficking of the methamphetamines that has the specific gram weight that [the grand jury] need[ed] to be worried about."  The grand jury thus could have indicted the defendant for trafficking in methamphetamine based on the composition and weight of the pills.  See Commonwealth v. Clayton, 63 Mass. App. Ct. 608, 612 (2005) ("Commonwealth need not present to the grand jury evidence of each theory under which the defendant may be found guilty at trial of the crime for which he is indicted," nor need "there be an exact match between the evidence presented at trial and that presented to the grand jury").

To the extent the defendant claims that he was not on fair notice of the factual basis of the indictment, he could have moved for a bill of particulars, but did not.  See G. L. c. 277, § 47A ("any defense or objection based upon defects in the . . . indictment . . . shall only be raised prior to trial"); Commonwealth v. Hrycenko, 417 Mass. 309, 312 (1994) (defendant

_____

[6] We acknowledge that the grand jury minutes remain impounded and discuss them only as necessary to resolve this appeal.

8

waived defense that indictments did not give fair notice of charges by failing to raise the issue before trial). And in any event, even assuming the claim is preserved, we see no merit to it. The Commonwealth explained during pretrial discussions that the indictment lined up with the "batch[] of methamphetamine" that the defendant threw "down a stairwell when the search warrant [was] executed." When the judge then asked defense counsel if he wished to be heard, defense counsel responded, "No . . . I'm clear on what we're doing." Thus, even had there been a variance, the defendant has not shown prejudice. See G. L. c. 277, § 35 ("A defendant shall not be acquitted on the ground of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defence").

The defendant argues in the alternative that, even assuming the pills were "a non-MDMA form of methamphetamine," the evidence was insufficient to prove distribution. This argument is premised on an inaccurate description of Trooper Bushay's testimony. We do not see where he testified that all "non-MDMA methamphetamine would be distributed in crystalized form," as the defendant suggests. While Trooper Bushay opined that the amount of crystal methamphetamine found in the Arby's bag was consistent with distribution, he did not testify that methamphetamine cannot be distributed in other forms. As to the

9

pills, Trooper Bushay's opinion was that the amount, between fifty and one hundred pills, "would last [a user] a very long time" and was thus "more indicative of distribution" than personal use, and that the pills were "more likely bought in bulk to be resold for a profit." This was sufficient to prove intent to distribute. See Commonwealth v. Lobo, 82 Mass. App. Ct. 803, 811 (2012).

On this record therefore, and viewing the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth sustained its burden of proving that the defendant trafficked in methamphetamine in violation of G. L. c. 94C, § 32E (b) (1). In the event evidence is uncovered showing that the pills were in fact comprised of MDMA, the defendant's remedy is through a motion for a new trial.

2. Possession. The defendant next argues that the evidence was insufficient to prove that he possessed the drugs found in the basement. We disagree. When the police entered the building, the defendant was in the first-floor hallway, which had stairs leading to the basement. He was the only one in the hallway, which Sergeant Lawrence described as "small," and there was no one in the basement. One bag of marijuana was in plain view on the landing near the door to the basement, and the other bags containing marijuana and pills were in plain view at the bottom of the stairs, as though the bags had been thrown.

10

Also, the defendant admitted that he sold marijuana, and his statement that he "just got here" could be viewed as false, suggesting consciousness of guilt.  From this evidence the jury could have found that the defendant threw the drugs into the basement in an effort to hide them.  While the defendant claims that he did not have enough time to traverse the hallway before the police entered, that was a factual question for the jury, and we do not second guess their resolution of it.  See Commonwealth v. Ronchi, 491 Mass. 284, 294 (2023).

Judgments affirmed.

Order denying motion to reconsider affirmed.

By the Court (Henry, Shin & Hodgens, JJ.[7]),

*Joseph F. Stanton*

Clerk

Entered:  April 13, 2023.

---

[7] The panelists are listed in order of seniority.